**O**

# United States District Court
# Central District of California

CORNERSTONE CONSTRUCTION
MATERIAL, LLC,

               Plaintiff,

     v.

FEC FUTURE CONTRACTORS AND
ENGINEERS, INC. et al.,

               Defendants.

Case No. 2:23-cv-00955-ODW (AJRx)

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS [62]**

## I.   INTRODUCTION

Plaintiff Cornerstone Construction Material, LLC brings this action against Defendants FEC Future Contractors and Engineers, Inc. ("FEC") and Old Republic Surety Company ("ORSC") (collectively "Defendants") for the alleged breach of construction materials supply contracts. (Fourth Am. Compl. ("FoAC"), ECF No. 59.) FEC now moves under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Plaintiff's first through sixth causes of action. (Mot. Dismiss ("Motion" or "Mot."), ECF No. 62.) For the following reasons, the Court **DENIES** Defendant's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

1

## II.   BACKGROUND

2   The following facts are taken from Plaintiffs' Fourth Amended Complaint.  *See*
3   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that well-pleaded factual allegations
4   are accepted as true for purposes of a motion to dismiss).

5   Plaintiff Cornerstone is a construction materials supplier organized as a Missouri
6   limited liability company.  (FoAC ¶ 1.)  Defendant FEC is a construction company
7   incorporated and operating in California.  (*Id.* ¶ 3.)  Defendant ORSC is an insurance
8   provider incorporated in Wisconsin.  (*Id.* ¶ 4.)

9   Cornerstone supplied materials to FEC for a public works construction project on
10  bridges in California (the "Project").  (*Id.* ¶¶ 9, 11.)  Cornerstone contracted with FEC
11  directly and the parties entered into a purchase order and multiple change orders.  (*Id.*
12  ¶¶ 10, 13; FoAC Ex. 1 ("Agreements"), ECF No. 59-1.)   The written agreements
13  between the parties included the General Terms and Conditions, the Purchase Order,
14  Change Orders, and Section 60 of the Caltrans 2018 Standard Plans and Specifications.
15  (*See* Agreements).   FEC in turn contracted with the California Department of
16  Transportation ("Caltrans") on the Project.  (FoAC ¶ 10.)  As the Project was a public
17  works project, FEC was required to procure a payment bond for Cornerstone, and FEC
18  obtained one from ORSC.[2]  (*Id.* ¶ 12.)

19  Cornerstone alleges that FEC mismanaged the Project, did not correctly use the
20  materials Cornerstone supplied, and did not understand the Caltrans testing
21  requirements.  (*Id.* ¶ 16.)  As a result, "Cornerstone's employees were required to be on
22  the project for longer periods of time," and had to "provide additional materials, incur
23  additional freight charges," secure testing on FEC's behalf, and perform additional
24  labor on the project.  (*Id.* ¶ 17.)  Cornerstone invoiced FEC for all the work performed,
25  but only received partial payment.   (*Id.* ¶¶ 21, 22; FoAC Ex. 2 ("Invoices"), ECF

26

---

27  [2] California Civil Code section 3247 requires that every contractor that receives a public works project
28  must contract to file a payment bond with an awarding agency, for review and approval before work
on the project begins.  Cal. Civ. Code § 3247.

No. 59-2.)  Furthermore, Cornerstone "made a claim on ORSC's bond in compliance with the terms of the bond and California law", but ORSC denied Cornerstone's claim. (*Id.* ¶ 26.)

Based on these allegations, Cornerstone asserts the following causes of action against FEC: (1) breach of contracts; (2) violation of the California Prompt Payment Act; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment; and (5) quantum meruit.  (*Id*. ¶¶ 28–42, 53–73.)  Cornerstone also asserts an action on payment bond against ORSC.  (*Id.* ¶¶ 43–52.)  Now, under Rule 12(b)(6), FEC moves to dismiss the causes of action that Cornerstone asserts against it.  (*See generally* Mot.)

### III.    LEGAL STANDARD

**A.    Federal Rule of Civil Procedure Rule 12(b)(6)**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a dismissal motion, a complaint need only satisfy the "minimal notice pleading requirements" of Rule 8(a)(2).  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  The factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim must be "plausible on its face" to avoid dismissal).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  However, a court need not blindly accept conclusory

3

1   allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v.*
2   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Ultimately, there must be
3   sufficient factual allegations "to give fair notice and to enable the opposing party to
4   defend itself effectively," and the "allegations that are taken as true must plausibly
5   suggest an entitlement to relief, such that it is not unfair to require the opposing party
6   to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*,
7   652 F.3d 1202, 1216 (9th Cir. 2011).

8                       **IV.    REQUEST FOR JUDICIAL NOTICE**

9           Concurrently with its motion, FEC requests that the Court take judicial notice of
10  Section 60 of the 2018 Caltrans Specifications.  (FEC Req. Judicial Notice ("FEC
11  RJN"), ECF No. 63.)

12          Although district courts generally may not consider evidence outside of the
13  pleadings when ruling on a motion to dismiss under Rule 12(b)(6), *see United States v.*
14  *Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003), a court may properly consider evidence
15  outside of the pleadings if it is properly subject to judicial notice or is incorporated by
16  reference into the pleadings. *Lee*, 250 F.3d at 689.

17          Furthermore, where the plaintiff refers to the material extensively or it forms the
18  basis of the plaintiff's claims, Courts may consider the material incorporated by
19  reference into the complaint as true for purposes of a motion to dismiss under
20  Rule 12(b)(6). *Ritchie*, 342 F.3d at 908; *see In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp.
21  2d 1148, 1159 (C.D. Cal. 2007) (taking judicial notice of a document where plaintiffs'
22  claims were "predicated upon" the document); *In re Copper Mountain Sec. Litig.*,
23  311 F. Supp. 2d 857, 864 (N.D. Cal. 2004) (recognizing press releases submitted in
24  opposition to a motion to dismiss under Rule 12(b)(6) via both judicial notice and
25  incorporation by reference).  The court generally takes notice of exhibits attached to the
26  Plaintiff's complaint, and if the facts appearing in those exhibits contradict those
27  alleged, the facts in the exhibits take precedence. *Holland v. Morse Diesel Int'l, Inc.*,
28  86 Cal. App. 4th 1443, 1447 (2001).

1  Here, FEC requests that the Court take judicial notice of the five-page excerpt of
2  Section 60 of the 2018 Caltrans Standard Plans and Specifications, of which both an
3  annotated and unannotated version was attached to Cornerstone's Fourth Amended
4  Complaint.  (Agreements 6–10.)  As Cornerstone included the five-page excerpt of
5  Section 60 in its Fourth Amended Complaint, Section 60 is expressly incorporated into
6  the agreement as a part of the purchase orders that form the basis of Cornerstone's
7  contract claim.  (*Id.*)  This incorporation allows the Court to take judicial notice of
8  Section 60, as per FEC's request.  Therefore, the Court **GRANTS** FEC's Request for
9  Judicial Notice and considers the materials appended thereto for the purposes of these
10  motions.

## V.    DISCUSSION

12  The Court first addresses FEC's argument that Cornerstone acted as an unlicensed
13  contractor in the agreements, as it applies to all causes of action Cornerstone asserts
14  against Defendants.

**B.    California Business & Professional Code 7031(a)**

16  "Business and Professions Code section 7031, subdivision (a) precludes an
17  unlicensed contractor from filing suit for the collection of compensation for the
18  performance of any act or contract where a license is required."  *Banis Rest. Design,*
19  *Inc. v. Serrano*, 134 Cal. App. 4th 1035, 1038 (2005) (internal quotation marks omitted).
20  "Business and Professions Code section 7031 bars unlicensed contractors from
21  bringing suit to recover compensation for work requiring a license."  *Holland*, 86 Cal.
22  App. 4th at 1445.  Specifically, "section 7031(a) bars a person from suing to recover
23  compensation for any work he or she did under an agreement for services requiring a
24  contractor's license unless proper licensure was in place at all times during such
25  contractual performance."  *MW Erectors, Inc. v. Niederhauser Ornamental & Metal*
26  *Works Co., Inc.*, 36 Cal. 4th 412, 419 (2005).  "Section 7031 advances the policies
27  behind the Contractors' State License Law by withholding judicial aid from those who

seek compensation for unlicensed contract work." *Banis*, 134 Cal. App. 4th at 1043 (internal quotation marks omitted).

The initial question before the court is whether Plaintiff "engaged in the business or acted in the capacity of a contractor," thereby triggering section 7031. *Id.* The term "contractor" for purposes of [s]ection 7026 is synonymous with the term "builder" and, within the meaning of section 7026, "a contractor is any person who undertakes to or offers to undertake to . . . construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building . . . or other structure, project, development or improvement, or to do any part thereof." Cal. Bus. & Prof. Code § 7026. The term "'[c]ontractor' includes subcontractor and specialty contractor." *Id.*

The essential feature that constitutes one as a subcontractor is that, in the course of the performance of the prime contract, they "construct a definite, substantial part of the work of improvement in accordance with the plans and specifications of such contract, not that they enter upon the job site and do the construction there." *Theisen v. Los Angeles County*, 54 Cal. 2d 170, 183 (1960). Whether a person seeking to recover for their labor is functioning as an employee or an independent contractor has been characterized as a question of fact. *Pickens v. Am. Mortg. Exch.*, 269 Cal. App. 2d 299, 305 (1969); *see also Denton v. Wiese*, 144 Cal. App. 2d 175, 180 (1956). Specifically, if the plaintiff's involvement as an unlicensed contractor was incidental to the overall agreement or transaction between the parties, it was thus unrelated to any protective concern of the licensing law. *Hydrotech Sys., Ltd. v. Oasis Waterpark*, 52 Cal. 3d 988, 1001 (1991).

## A.    Cornerstone's Rendition of Services Was Incidental To The Overall Agreement For Supplies Between the Parties.

Like the courts in *Pickens* and *Denton*, this Court will also consider the specific facts of the case to ascertain whether Cornerstone entered into the agreement as a contractor or a supplier. *Pickens*, 269 Cal. App. 2d at 305; *Denton*, 144 Cal. App. 2d at 180. The Court first looks at the language and content of the agreement, then

considers whether the rendition of services was incidental to the overall agreement between the parties.  *See, e.g.*, *Banis*, 134 Cal. App. 4th at 1046.

> *1.      The content and language of the contract support that Cornerstone entered into the agreement as a supplier of goods.*

First, the Court addresses the written agreements[3] between the parties. (Agreements 1–10.)  Cornerstone's Fourth Amended Complaint and Agreements do not describe work that comes within the statutory definition of a contractor.  (*See generally* FoAC; Agreements.)  Indeed, there is no direct reference in these written agreements to the intended performance of any services by Cornerstone, or any intended duties that go beyond the scope of duties normally performed by a supplier.  (Agreements 1–10.) Instead, the written agreements specifically discuss dates and terms for the purchase and delivery of materials.  (*Id.*)  Thus, based on the written agreements, it appears the parties intended Cornerstone to act as a supplier of goods to FEC and not as a contractor.

Furthermore, the language used in the written agreements reflects that of an agreement between a purchaser and a supplier.  (*Id.*)  For instance, in the General Terms and Conditions, the second and third sections refer to the "goods" to be supplied by Cornerstone.  (Agreements 3.)  Sections ten and eleven refer to the "delivery of materials" by the "supplier."  (*Id.*)  Sections five, six, and fourteen refer to Cornerstone as the "seller."  (*Id.*)  Lastly, the final paragraph refers to the agreement as a "Purchase Order," which demonstrates that the parties intended the agreement to serve as a purchase of goods rather than the rendition of services.  (*Id.*)  Moreover, there is no reference to any rendition of services by Cornerstone in any of the Terms and Conditions.  (*See* Agreements 3.)

Next, the Purchase Order includes the word "seller" next to Cornerstone's signature line and refers to FEC as "[p]urchaser" in the bottom paragraph.  (*Id.*)  The price of the contract is attached to the quantity of goods received, showing that the

---

[3]Here, the term "written agreements" includes the General Terms and Conditions, the Purchase Order, Change Orders, and Section 60 of the Caltrans 2018 Standard Plans and Specifications.

1    payment was only for the goods and nothing else. (*Id.*) Moreover, the only reference
2    to services in the contract is Cornerstones actual delivery of the materials. (*Id.*)

3    Lastly, Section 60 of the Caltrans 2018 Standard Plans and Specifications is
4    referenced and included in its entirety in the agreement. (Agreements 6–10.) Although
5    this includes Sections 60-3.04B(3)(b) and 60-3.04B(3)(c), which outline instructions on
6    "construction" and "placing" of materials, these services are not mentioned anywhere
7    else in the agreement as a responsibility of Cornerstone. (*Id.* at 9; *see generally*
8    Agreements.) Rather, the quantity of items to be provided by Cornerstone, and its
9    clearly identified role as a supplier/seller, are both mentioned multiple times in the other
10   sections of the agreement. (Agreements 3–4.) Thus, the parties' inclusion of those
11   instructions does not demonstrate an intent for Cornerstone to render those services.

12   Accordingly, the Court finds that the content and language of the contracts
13   support that Cornerstone contracted in their capacity as a supplier, not as a contractor.

14                  *2.    The work Cornerstone did on the project was incidental to the*
15                         *overall agreement.*

16   As the court held in *Theisen*, it is not enough for this Court to consider
17   Cornerstone a contractor simply because it entered the job site and performed work
18   there. *Theisen,* 54 Cal. 2d at 183. As discussed in the Court's analysis above, it is clear
19   from the language and content of the contract that the parties did not intend for
20   Cornerstone to take on the role of a contractor or perform any work in such a capacity.
21   (Agreements 1–10.) As the facts indicate, any services Cornerstone may have
22   performed were a result of FEC's mismanagement of the materials it supplied, including
23   not following the instructions for the use of the supplies and acquiring the mandated
24   testing. (FoAC ¶¶ 16, 17.) Although Cornerstone may have performed some labor on
25   the project, Cornerstone and FEC did not agree upon this work being done beforehand.
26   (*Id.*; Agreements 1–10.) Therefore, the work Cornerstone did on the project was
27   incidental to the overall agreement. *Hydrotech Sys.*, 52 Cal. 3d at 1001.

28   **B.    Overall Denial of Dismissal**

Based on the analysis above, the Court finds that Cornerstone was not acting as a contractor but rather as a supplier of goods.  Therefore, the Court **DENIES** FEC's Motion to Dismiss.  The Court does not find it necessary to address FEC's additional arguments for dismissal because the underlying argument—that Cornerstone was acting as a contractor without a license—is rejected by the Court.

## VI.    CONCLUSION

For the reasons discussed above, the Court **DENIES** FEC's Motion to Dismiss the Fourth Amended Complaint.  (ECF No. 62.)

**IT IS SO ORDERED.**

April 29, 2024

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**